IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CHOICE PAIN &** | * | |
| **REHABILITATION CENTER, LLC,** | | |
| | * | |
| **Plaintiff,** | | |
| | * | |
| v. | | |
| | * | **Civ. No. DLB-24-2144** |
| **OPTUM, INC.,** *et al.*, | | |
| | * | |
| **Defendants.** | | |
| | * | |

**MEMORANDUM OPINION**

Choice Pain & Rehabilitation Center, LLC ("Choice Pain"), is a Maryland-based, African American-owned business that provides healthcare to Medicaid-qualified individuals and seeks reimbursement for those services from the State of Maryland. Reimbursement requests are submitted to a claims administrator. During the years at issue, the administrator was United Behavioral Health, Inc. ("UBH"), which does business as Optum Maryland. In 2022, Optum Maryland began denying Choice Pain's claims for reimbursement. Choice Pain tried to resolve the issue with Optum Maryland but was unable to resolve the problem to its satisfaction. Eventually, Choice Pain sued Optum Maryland in the Circuit Court for Prince George's County. Choice Pain alleged: (1) that Optum Maryland discriminated against it based on race in violation of 42 U.S.C. § 1981; (2) that Optum Maryland negligently misrepresented Choice Pain's qualification for reimbursement; (3) that Optum Maryland tortiously interfered with its business relationships; and (4) that Optum Maryland was negligent by suddenly and without justification denying Choice Pain's claims for reimbursement. Optum Maryland and its codefendant, Optum, Inc., removed the case to this Court and now have moved to dismiss. For the reasons below, the Court grants the motion to dismiss. Choice Pain's claims are dismissed without prejudice.

I.        **Background**[1]

Medicaid and the Maryland Department of Health ("MDH") reimburse healthcare providers for medical services, such as treating patients who abuse substances. *See* ECF 2, ¶¶ 7–8. Part of substance abuse treatment requires toxicology tests. *See id.* ¶ 14. Choice Pain provides such toxicology tests at its eight pain management clinics across Maryland. *Id.* ¶¶ 13–14. It then sends those tests to its toxicology laboratory in Prince George's County for evaluation. *Id.* ¶¶ 14–15. Once it has evaluated a sample, Choice Pain seeks reimbursement for that sample by preparing a claim. *Id.* ¶ 15. On each claim, Choice Pain, like all healthcare providers, notes its toxicology lab's National Provider Identifier ("NPI"), "a unique 10-digit identification number that [the Centers for Medicare & Medicaid Services] issues to all healthcare providers in the United States." *Id.* ¶ 16. The claim also includes a billing code specific to the treatment provided, which in this case was drug testing. *Id.* ¶ 17. With the claim prepared, Choice Pain submits it to an administrative service organization, and that organization typically approves the claims and reimburses Choice Pain within four weeks. *See id.* ¶¶ 11, 18.

Optum Maryland was Maryland's administrative service organization for the years at issue. *Id.* ¶¶ 10–11. MDH contracted with Optum Maryland to administer claims from providers like Choice Pain. *See id.* ¶¶ 10–11. For some time, Choice Pain submitted claims to Optum Maryland without any issues. *See id.* ¶ 18. In 2021, Choice Pain received a new NPI. *See id.* ¶ 19. Choice Pain provided the new NPI "to Optum Maryland's employee, Tammy Fox." *Id.* So it was that Choice Pain routinely submitted claims to Optum Maryland, and Optum Maryland routinely approved those claims. *See id.* ¶ 18.

---

[1] The Court accepts all well-pleaded facts as true. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022).

But in January 2022, that ended: Optum Maryland rejected Choice Pain's claims for certain tests associated with a particular billing code. *Id.* ¶¶ 20–21. Choice Pain asked Optum Maryland about the sudden and unexplained rejections. *Id.* ¶ 22. Optum Maryland replied that Choice Pain was "no longer part of its 'system' or 'carve-out' for the toxicology lab." *Id.* From January through May 2022, Optum Maryland denied Choice Pain's claims with that billing code. *Id.* ¶ 23. Yet, Choice Pain alleges, Optum Maryland continued accepting claims from providers similar to Choice Pain. *Id.* ¶ 24. The only difference between Choice Pain and those providers: Choice Pain is owned and operated by two African American men. *Id.* ¶ 35.

To mitigate its losses, Choice Pain rerouted its toxicology tests through other companies' labs from June to December 2022. *Id.* ¶ 26. In November 2022, Choice Pain filed a complaint against Optum Maryland with MDH. *Id.* ¶ 28. In April 2023, Optum Maryland began issuing partial reimbursement to Choice Pain for claims Optum Maryland previously had denied. *See id.* ¶ 29.

The next month, in a letter responding to Choice Pain's complaint against Optum Maryland ("MDH Letter"), MDH informed Choice Pain that Optum Maryland's "denials were a result of [Choice Pain's] provider file not being set up correctly to bill the Behavioral Health Administrative Services Organization," i.e., Optum Maryland, "due to an issue with [Choice Pain's] NPI." ECF 1-1. Further, MDH told Choice Pain that "[p]roviders are responsible for updating their provider file correctly . . . so that they may be paid timely." *Id.* Apparently, Choice Pain *had* updated its provider file but not until November 2022. *See id.* Two days after the update, Medicaid approved it. *Id.* ("Your program submitted an application for the correct NPI on November 4, 2022 and Medicaid Provider Enrollment approved the application on November 6, 2022."). MDH also informed Choice Pain that MDH had "confirmed with Optum that [Choice Pain's] corrected

provider file was set up correctly in the . . . Provider Portal to be reimbursed for toxicology services effective back to February 2021." *Id.* Finally, MDH directed Choice Pain "to rebill the claims to Optum Maryland using [its] new NPI . . . because neither MDH nor Optum Maryland can take action on claims submitted under an unpayable NPI." *Id.* Since resubmitting its claims with an accurate NPI, Choice Pain has recovered "a small portion of the revenue it lost." ECF 2, ¶ 31.

In total, Choice Pain alleges it lost more than $1,060,000 in revenue in 2022 because of Optum Maryland's claim denials. *Id.* ¶ 1. Further, Choice Pain's losses required it to take high-interest loans to cover expenses, to lay off 12 employees, and to "abandon several of its providers." *Id.* ¶ 27.

Choice Pain sued Optum Maryland and Optum, Inc. in the Circuit Court for Prince George's County, alleging unlawful discrimination based on race in violation of 42 U.S.C. § 1981, negligent misrepresentation, tortious interference with business relationships, and negligence. ECF 2, ¶¶ 32–56. After the defendants removed the case to this Court, they moved to dismiss the claims against Optum, Inc. for lack of personal jurisdiction and the claims against Optum Maryland for failure to state a claim. ECF 6. The motion is fully briefed. ECF 6-1, 15, 19. A hearing is not necessary. *See* Loc. R. 105.6.

## II.     Standards of Review

### A.     Motion to Dismiss for Lack of Jurisdiction

A Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction challenges the propriety of a particular court's exercise of power over a particular defendant. *See Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 131 (4th Cir. 2020). The inquiry for a Rule 12(b)(2) motion is similar to the inquiry for a Rule 12(b)(6) motion: "[T]he district court must determine whether the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal

jurisdiction over the party challenging jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019). But there is one significant difference: "[A] court may look beyond the complaint to affidavits and exhibits in order to assure itself of personal jurisdiction." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020) (citing *Grayson v. Anderson*, 816 F.3d 262, 269 (4th Cir. 2016)). Throughout, the court must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). Nevertheless, "[w]hen personal jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, the party asserting jurisdiction has the burden of establishing a *prima facie* case of jurisdiction." *Hawkins*, 935 F.3d at 226.

### B.    Motion to Dismiss for Failure to State a Claim

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that a defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ Is the Answer Ministries, Inc. v. Baltimore County*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams*, 45 F.4th at 765, 777. But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 212 (4th Cir. 2019)). The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

## III.    Discussion

The Court does not have personal jurisdiction over Optum, Inc. As for the claims against Optum Maryland, Choice Pain has failed to state a viable claim for racial discrimination, negligence, negligent misrepresentation, or tortious interference with business relationships.

### A.    Jurisdiction over Optum, Inc.

A federal district court may have either general or specific jurisdiction over a nonresident defendant. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003). A court has general jurisdiction over a defendant if the defendant's conduct in the state is not the basis for the suit, *see id.*, and the defendant's connections to the state are "so constant and pervasive as to render it essentially at home in the forum State," *Fidrych*, 952 F.3d at 132 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)). By contrast, a court has specific jurisdiction over a nonresident defendant if "the defendant has purposefully availed itself of the privilege of

conducting activities in the state," "the plaintiff['s] claims arise out of those activities directed at the state," and "the exercise of personal jurisdiction would be constitutionally reasonable." *Carefirst*, 334 F.3d at 397. Choice Pain concedes that the Court does not have general jurisdiction over Optum, Inc. ECF 15, at 13. Choice Pain, then, must establish that this Court has specific jurisdiction over Optum, Inc.

A federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. *See* Fed. R. Civ. P. 4(k)(1)(A); *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997). Specific jurisdiction exists if, but only if, "(1) the exercise of jurisdiction [is] authorized under the state's long-arm statute; and (2) the exercise of jurisdiction . . . comport[s] with the due process requirements of the Fourteenth Amendment." *Carefirst*, 334 F.3d at 396.

Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103(b), reaches as far as the Due Process Clause permits. *See Carefirst*, 334 F.3d at 396 (citing *Mohamed v. Michael*, 370 A.2d 551, 553 (Md. 1977)). Even so, courts cannot combine their analyses of the long-arm statute and the Due Process Clause. *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 493 n.6 (Md. 2006). Rather, they first must apply the long-arm statute to the facts to determine whether the "defendant's activities are covered by the statutory language." *Dring v. Sullivan*, 423 F. Supp. 2d 540, 545 (D. Md. 2006) (quoting *Joseph M. Coleman & Assocs., Ltd. v. Colonial Metals*, 887 F. Supp. 116, 118 n.2 (D. Md. 1995)). After an analysis of the long-arm statute, courts next analyze whether the exercise of personal jurisdiction over a nonresident defendant accords with due process. *See Carefirst*, 334 F.3d at 397.

Maryland's long-arm statute limits specific jurisdiction to cases where the cause of action "aris[es] from any act enumerated in the statute itself." Md. Code, Cts. & Jud. Proc. § 6-103(a). The statute authorizes jurisdiction over a party who, directly or by an agent, acts in one of six

ways, two of which Choice Pain relies on: "(1) [t]ransact[ing] any business or perform[ing] any character of work or service in the State; (2) [c]ontract[ing] to supply goods, food, services, or manufactured products in the State." *Id.* § 6-103(b)(1)–(2).

Section 6-103(b)(1) authorizes "jurisdiction over a person, who directly or by an agent . . . [t]ransacts any business or performs any character of work or service in the State." "Maryland courts have construed the phrase 'transacting business' narrowly, requiring, for example, significant negotiations or intentional advertising and selling in the forum state." *Cranford v. Tenn. Steel Haulers, Inc.*, No. ELH-17-2768, 2018 WL 3496428, at *5 (D. Md. July 20, 2018) (quoting *Aphena Pharma Sols.-Md. LLC v. BioZone Lab'ys, Inc.*, 912 F. Supp. 2d 309, 315 (D. Md. 2012)). "'[S]everal contacts related to the cause of action only tangentially' do not establish personal jurisdiction." *Id.* (quoting *Stisser v. SP Bancorp, Inc.*, 174 A.3d 405, 428 (Md. App. Ct. 2017)). Courts generally hold that business practices only tenuously connected to the cause of action are not enough to confer specific jurisdiction. *Aphena*, 912 F. Supp. 2d at 316 (finding no personal jurisdiction despite some initial contact with and payment from Maryland because most of the negotiations occurred out of state).

Section 6-103(b)(2) of the long-arm statute authorizes specific jurisdiction over a party who "[c]ontracts to supply goods, food, services, or manufactured products in the State." This section has been interpreted to apply only to "contracts to supply goods and services in Maryland, irrespective of where the contract was negotiated." *Rao v. Era Alaska Airlines*, 22 F. Supp. 3d 529, 535 (D. Md. 2014) (quoting *A Love of Food LLC v. Maoz Vegetarian USA, Inc.*, 795 F. Supp. 2d 365, 370 (D. Md. 2011)).

In support of its motion to dismiss for lack of personal jurisdiction, Optum, Inc. submitted a declaration of Christina Thompson, a director at Optum Care Solutions, Inc. ECF 6-2, ¶ 3.

Thompson explains the relationship between Optum, Inc. and Optum Maryland: Although "Optum, Inc. and UBH [Optum Maryland] are affiliated companies under the ultimate parent company UnitedHealth Group," they "are separate and distinct corporate entities." *Id.* ¶ 7. UBH, doing business as Optum Maryland, contracted with MDH to administer behavioral health benefits for Maryland's Medicaid program. *Id.* ¶ 6. Under that contract, Optum Maryland's role includes "process[ing] healthcare providers' claims for reimbursement submitted to Maryland's Medicaid program . . . ." *Id.* Optum, Inc., however, does not have a contract with MDH to administer health benefits in Maryland. *See id.* ¶ 7. Nor does Optum, Inc. approve or deny claims submitted by healthcare providers. *Id.* It has never received or processed claims from Choice Pain. *Id.* ¶ 8. Further, Optum, Inc. does not "do business as 'Optum Maryland'" or as "Optum Maryland Behavioral Care of Maryland." *Id.* ¶¶ 8–9. Optum, Inc. does not transact business in Maryland, and it did not contract with MDH to supply services in Maryland. *See id.*

Choice Pain has no response to Thompson's sworn statements. *See* ECF 15, at 13–14 (failing to address the existence of Thompson's declaration). Instead, Choice Pain stands on its allegation that "Optum, Inc. entered into a partnership [referred to as 'Optum Maryland'] with MDH to improve and advance Maryland's behavioral health services." ECF 2, ¶ 9.[2] Yet that allegation cannot carry Choice Pain's burden in the face of Optum Inc.'s credible evidence that it is distinct from Optum Maryland, it did not contract with MDH, and it does not transact business in Maryland at all. *See Hawkins*, 935 F.3d at 226 (noting that "the party asserting jurisdiction has

---

[2] Choice Pain attaches to its opposition a screenshot of Optum Maryland's website, ECF 15-1, and suggests that Optum Maryland "is owned in part by Optum, Inc," ECF 15, at 6. That is not what the screenshot says. At best, the screenshot shows that a partnership exists between MDH and "Optum." *Which* Optum—Optum, Inc. or some other affiliated company—is unclear.

the burden of establishing a prima facie case of jurisdiction"). Consequently, Choice Pain has not

established personal jurisdiction over Optum, Inc., under Maryland's long-arm statute.

Nor has Choice Pain established that exercising personal jurisdiction over Optum, Inc.

would comport with due process. Choice Pain has not shown that Optum, Inc. "has purposefully

availed itself of the privilege of conducting activities" in Maryland or that Choice Pain's "claims

arise out of those activities directed at the state." *See Carefirst*, 334 F.3d at 396–97.

The Court has "afford[ed] the parties a fair opportunity to present both the relevant

jurisdictional evidence and their legal arguments." *See Grayson*, 816 F.3d at 268. And still, Choice

Pain has not established that the Court has personal jurisdiction over Optum, Inc. Accordingly, the

Court grants the motion to dismiss, without prejudice, as to Optum, Inc. for want of personal

jurisdiction.

### B.    The Claims Against Optum Maryland

#### 1.    *Count I: Racial Discrimination Violating 42 U.S.C. § 1981*

"Congress passed § 1981 to guarantee[] to all persons in the United States the same right

. . . to make and enforce contracts . . . as is enjoyed by white citizens." *Nadendla v. WakeMed*, 24

F.4th 299, 305 (4th Cir. 2022) (quoting *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1017 (4th

Cir. 1999)) (internal quotation marks omitted). The statute "defines 'make and enforce contracts'

as including the 'making, performance, modification, and termination of contracts, and the

enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.'" *Id.*

(quoting 42 U.S.C. § 1981(b)). To state a cause of action under § 1981, a plaintiff "must allege

facts that, if accepted as true, allow the court to draw a reasonable inference" that (1) "the

defendant intended to discriminate on the basis of race"; (2) "the discrimination interfered with a

contractual interest"; and (3) "the interference with a contractual interest would not have happened

but for the plaintiff's race." *Id.* (internal quotation marks and citations omitted); *see also Buchanan v. Consol. Stores Corp.*, 125 F. Supp. 2d 730, 734 (D. Md. 2001).

As a threshold matter, Choice Pain has sufficiently alleged that it is "entirely owned . . . by a protected minority group." *See Woods v. City of Greensboro*, 855 F.3d 639, 646 (4th Cir. 2017). So, Choice Pain "has set forth sufficient factual allegations to establish an imputed racial identity, which confers standing to assert a racial discrimination claim under § 1981." *See id.*

However, Choice Pain fails to allege facts that allow the Court to draw the reasonable inference that Optum Maryland discriminated against Choice Pain because of the race of Choice Pain's owners.[3]

As to the first element, discriminatory intent, Choice Pain alleges that while "Optum Maryland denied Choice Pain's claims, it was accepting the same exact claims from other similarly situated toxicology labs" that were not minority owned. ECF 2, ¶ 24. It also alleges that Optum Maryland "knew that Choice Pain was a minority-owned business," *id.* ¶ 36, and because of that characteristic, it "intentionally discriminated against Choice Pain," *id.* ¶ 37. Thus, Choice Pain alleges, in conclusory terms, that Optum Maryland "intended to discriminate on the basis of race." *See Nadendla*, 24 F.4th at 305. But Choice Pain's allegations end there. The complaint "provides no details about any of these conclusory allegations" that Optum Maryland intended to discriminate. *See id.* Choice Pain does not plead facts that suggest Optum Maryland ever

---

[3] Choice Pain attaches to its opposition a declaration by a billing specialist who has worked with Choice Pain and three other providers, each "owned by White individuals." *See* ECF 15-2, ¶¶ 2, 6, 8, 10. The Court does not consider the information in the exhibit because none of the information is in the complaint. Choice Pain "may not cure a defect in [its] complaint or otherwise amend a complaint by way of opposition briefing." *United States ex rel. Sheldon v. Forest Lab'ys, LLC*, No. ELH-14-2535, 2024 WL 4544567, at *16 (D. Md. Oct. 22, 2024) (citations omitted) (collecting cases); *see S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy.").

commented on Choice Pain's owners' race or that Optum Maryland even knew the specific race of Choice Pain's owners. Choice Pain does not state whether Optum Maryland denied claims submitted by other minority-owned labs, how labs with non-minority owners were similarly situated to it, whether non-minority owned labs were using the same billing codes as Choice Pain, or whether those labs submitted claims under accurate NPIs. *See* ECF 2, ¶¶ 24, 35–38. The complaint is bereft of any specific allegations of discriminatory intent. Choice Pain does not plausibly allege that Optum Maryland intended to discriminate against it on the basis of the race of the company's owners. *See McCleary-Evans v. Md. Dep't of Transp., State Hwy. Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (finding that although the plaintiff "repeatedly alleged" that the defendant mistreated her "because of the relevant decisionmakers' bias against African American women . . . those 'naked' allegations—a 'formulaic recitation' of the necessary elements—'are no more than conclusions' and therefore do not suffice" (quoting *Iqbal*, 556 U.S. at 678–79)).[4]

Skipping the second element of a § 1981 claim, the Court finds that Choice Pain does not sufficiently allege the third element—that but for the race of Choice Pain's owners, Optum Maryland would not have interfered with Choice Pain's contracts. *See Nadendla*, 24 F.4th at 305. The MDH Letter that Choice Pain attached to its complaint undermines Choice Pain's claim of racial discrimination. MDH told Choice Pain the non-discriminatory reason why Optum Maryland rejected its claims: Choice Pain used the wrong NPI, and Choice Pain was responsible for correcting the problem. The letter states in part:

---

[4] The fact that Choice Pain did not plead that Optum Maryland did not know its owners' race is not dispositive. *See Inner City Contracting, LLC v. Charter Twp. of Northville*, 87 F.4th 743, 754–56 (6th Cir. 2023) (holding a plaintiff need not allege the defendant knew its specific race to survive a motion to dismiss its § 1981 claim). Even if Choice Pain had pled that fact, Choice Pain still would not plausibly allege discriminatory intent because there are no other specific allegations of discriminatory intent.

> Your program reached out to MDH regarding the denials in November 2022 and it was determined that *the denials were a result of your provider file not being set up correctly* to bill the Behavioral Health Administrative Services Organization due to an issue with your NPI. *Providers are responsible for updating their provider file* correctly in ePrep so that they may be paid timely.

ECF 1-1 (emphases added). "[N]either MDH nor Optum Maryland can take action on claims submitted under an unpayable NPI." *Id.* After identifying Choice Pain's error, MDH stated that it had "confirmed with Optum that [Choice Pain's] corrected provider file was set up correctly in the . . . Provider Portal to be reimbursed for toxicology services effective back to February 2021." *Id.* All that Choice Pain needed to do for reimbursement was "rebill the claims to Optum Maryland using [its] new NPI." *Id.* (noting this was true for "any additional outstanding claims"). Thus, by Choice Pain's own allegations, Optum Maryland had a non-discriminatory reason to reject its claims. So, even accepting the well-pleaded facts as true, the Court cannot infer that racial animus was the but-for cause of Optum Maryland's claim denials.

Choice Pain has not pleaded sufficient facts to state a plausible claim for racial discrimination. The Court dismisses the § 1981 claim.

### 2.     *Count IV: Negligence*

To state a negligence claim under Maryland law, Choice Pain must allege: "1) that the defendant was under a duty to protect the plaintiff from injury, 2) that the defendant breached that duty, 3) that the plaintiff suffered actual injury or loss, and 4) that the loss or injury proximately resulted from the defendant's breach of that duty." *Steamfitters Loc. Union No. 602 v. Erie Ins. Exch.*, 233 A.3d 59, 72 (Md. 2020) (quoting *Rowhouses, Inc. v. Smith*, 133 A.3d 1054, 1066 (Md. 2016)). The Court determines whether a duty exists as a matter of law. *Id.* "Absent a duty of care, there can be no liability in negligence." *Walpert, Smullian & Blumenthal, P.A. v. Katz*, 762 A.2d 582, 587 (Md. 2000); *see also Stewart v. Bierman*, 859 F. Supp. 2d 754, 767 (D. Md. 2012), *aff'd*

*sub nom. Lembach v. Bierman*, 528 F. App'x 297 (4th Cir. 2013) (dismissing a negligence claim

when "it [was] unclear what duty Defendants owed to Plaintiffs").

A "duty" is "an obligation, to which the law will give recognition and effect, to conform to

a particular standard of conduct toward one another." *100 Inv. Ltd. P'ship v. Columbia Town Ctr.*

*Title Co.*, 60 A.3d 1, 10 (Md. 2013) (quoting *Blondell v. Littlepage*, 991 A.2d 80, 94 (Md. 2010)).

And "whether 'an actionable duty exists represents a policy question of whether the specific

plaintiff is entitled to protection from the acts of the defendant.'" *Id.* (quoting *Blondell*, 991 A.2d

at 94). Courts are reluctant to extend tort liability in new contexts. *See, e.g.*, *Balfour Beatty*

*Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 155 A.3d 445, 459–62 (Md. 2017) (declining

to extend tort liability in the context of construction projects "because the complex web of

contractual arrangements predominates and injecting a tort duty is not in the public interest");

*Jones v. Hyatt Ins. Agency, Inc.*, 741 A.2d 1099, 1108–09 (Md. 1999) (declining to extend tort

liability of an insurance agency to third-party beneficiaries after the insurance agency failed to

procure liability insurance for an insured); *Erie Ins. Co. v. Chops*, 585 A.2d 232, 235 (Md. 1991)

(declining to extend tort liability where a statute imposed a duty on automobile insurers to notify

motor vehicle administration of cancellation of automobile insurance policy and "the statute did

not create a legally cognizable duty running from [the insurer] to all persons who might thereafter

suffer economic damage by reason of involvement in an accident with an uninsured motorist").

The Supreme Court of Maryland has developed a test to determine whether to recognize a

duty:

> [T]wo major considerations are: the nature of the harm likely to result from a failure
> to exercise due care, and the relationship that exists between the parties. Where the
> failure to exercise due care creates a risk of economic loss only, courts have
> generally required an intimate nexus between the parties as a condition to the
> imposition of tort liability. This intimate nexus is satisfied by contractual privity or
> its equivalent. By contrast, where the risk created is one of personal injury, no such

direct relationship need be shown, and the principal determinant of duty becomes
foreseeability.

*Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756, 759 (Md. 1986) (footnotes and citations omitted).

Because Optum Maryland's alleged conduct "create[d] a risk of economic loss only," Choice Pain must allege an intimate nexus between itself and Optum Maryland to adequately allege Optum Maryland owed it a duty. *See id.* Choice Pain does not allege contractual privity with Optum Maryland, so it cannot establish an intimate nexus by contractual privity.

To allege an intimate nexus without contractual privity, a plaintiff must plausibly allege that it had such a close relationship with the defendant that it relied on the defendant's exercise of due care. *Balfour Beatty*, 155 A.3d at 456. An intimate nexus is more likely to exist when "the defendant knew or should have known of the plaintiff's reliance." *Id.* at 457 (finding that the defendant–bank had a duty to process the plaintiff's application with reasonable care given the bank's close relationship with the plaintiff and the bank's knowledge that the plaintiff relied on the bank's service). That is, the plaintiff's reliance should be *foreseeable* to the defendant. *See id.* at 455; *Walpert*, 762 A.2d at 596 ("[T]he reason for the requirement is to limit the defendant's risk exposure to an actually foreseeable extent, thus permitting a defendant to control the risk to which the defendant is exposed."). If, however, the plaintiff is one of an "'indeterminate class of persons,' there [is] no privity or close enough relationship to hold the [defendants] liable for negligence." *100 Inv. Ltd.*, 60 A.3d at 11 (citation omitted). So, ultimately, "context is critical." *Balfour Beatty*, 155 A.3d at 457 (evaluating for the first time "whether to apply the economic loss doctrine in the construction context" (footnote omitted)).

Choice Pain does not allege facts from which the Court may plausibly infer that Choice Pain had such a close relationship with Optum Maryland that it relied on its exercise of due care.

15

Choice Pain alleges that Optum Maryland "manages Maryland's Public Behavior Health System," which includes "the management and processing of claims submitted by providers like Choice Pain." ECF 2, ¶ 11. But Choice Pain does not allege how many providers like Choice Pain exist. The providers may be so numerous—new providers opening daily, others closing—that Choice Pain is but one among "an indeterminate class." *See 100 Inv. Ltd.*, 60 A.3d at 11 (citation omitted). And even though Optum Maryland had processed Choice Pain's reimbursement claims before, *id.* ¶ 18, that fact alone does not make Choice Pain a foreseeable plaintiff. *Cf. Jacques*, 515 A.2d at 760 (examining a New York case in which New York's highest court found that although certain "accountants were generally on notice that the balance sheet [they prepared] was likely to be relied upon by [third parties]," that notice did not give rise to a duty of care running to those parties (citing *Ultramares Corp. v. Touche*, 174 N.E. 441 (N.Y. 1931)). A defendant may know that others will rely on it, but that knowledge does not, by itself, give rise to a duty of care between the defendant and a plaintiff. *See id.*; *Balfour Beatty*, 155 A.3d at 454 ("[T]he relationship between [the defendant] and the [plaintiff] was not close enough to support finding an intimate nexus—and corresponding tort duty." (citing *Jacques*, 515 A.2d at 760)). Further, Choice Pain cites no cases that have found a health insurance claims administrator owes a medical provider a duty to exercise due care in the processing of the provider's claims for reimbursement. The health insurance industry, like the government contract industry, includes a notoriously "complex web of contractual arrangements." *See Balfour Beatty*, 155 A.3d at 462. Under these circumstances, and upon consideration of the facts alleged by Choice Pain, the Court will not extend tort liability to Optum Maryland.

Choice Pain has failed to allege Optum Maryland owed it a duty. Because Choice Pain has not alleged a duty, it has not stated a claim for negligence. The negligence claim is dismissed.

###### 3.    *Count II: Negligent Misrepresentation*

"[N]egligent misrepresentation arises when the defendant owes a duty of care in communicating information to the plaintiff and that duty is breached, causing pecuniary or personal injury to the plaintiff." *Griesi v. Atl. Gen. Hosp. Corp.*, 756 A.2d 548, 553 (Md. 2000) (citations omitted). The five elements of negligent misrepresentation are:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;
> (2) the defendant intends that his statement will be acted upon by the plaintiff;
> (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;
> (4) the plaintiff, justifiably, takes action in reliance on the statement; and
> (5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Id.* (citations omitted).

Choice Pain has not plausibly alleged that Optum Maryland owed it a duty of care. So this count fails there. And even if it had alleged a duty, what Optum Maryland allegedly told Choice Pain—"that Choice Pain was no longer part of its 'system' or 'carve-out' for the toxicology lab," ECF 2, ¶ 22—appears from the complaint to have been substantially true. At the very least, Choice Pain has not plausibly alleged the statement was false. On these allegations, the negligent misrepresentation claim cannot survive a motion to dismiss. The negligent misrepresentation claim is dismissed.

###### 4.    *Count III: Tortious Interference with Business Relationships*

In Maryland, a claim of tortious interference with prospective business or economic relations has four elements: "(1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Kaser v. Fin. Prot. Mktg., Inc.*, 831 A.2d 49, 53 (Md. 2003)

(quoting *Willner v. Silverman*, 71 A. 962, 964 (Md. 1909)). The plaintiff also must identify the "possible future relationship which is likely to occur, absent the interference, with specificity." *Mixter v. Farmer*, 81 A.3d 631, 638 (Md. Ct. App. 2013) (quoting *Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 546 (D. Md. 2006)).

Maryland courts are careful to distinguish tortious interference from permissible competition in the marketplace. *See Nat. Design, Inc. v. Rouse Co.*, 485 A.2d 663, 676 (Md. 1984). To that end, both "tortious intent and improper or wrongful conduct" on the part of the defendant are necessary. *Kaser*, 831 A.2d at 54 (quoting *Macklin v. Robert Logan Assocs.*, 639 A.2d 112, 119 (Md. 1994)). Tortious intent is intent "to harm the plaintiff or to benefit the defendant at the expense of the plaintiff." *Macklin*, 639 A.2d at 119. The underlying conduct must be "independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." *Kaser*, 831 A.2d at 53 (quoting *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 271 (Md. 1994)). Qualifying conduct includes "violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits . . . in bad faith." *Alexander & Alexander*, 650 A.2d at 271. "In addition, 'actual malice,' in the sense of ill will, hatred or spite, may be sufficient to make an act of interference wrongful where the defendant's malice is the primary factor that motivates the interference," unless the "animosity was incidental to [the] pursuit of legitimate commercial goals." *Id.*

Choice Pain does not sufficiently allege a claim for tortious interference with business relationships. First, Choice Pain does not allege that Optum Maryland intended "to harm [Choice Pain] or to benefit . . . at [its] expense." *See Macklin*, 639 A.2d at 119. The MDH Letter suggests that Optum Maryland's intent was to deny improperly submitted claims, not to harm Choice Pain.

And Choice Pain does not allege that Optum Maryland benefitted when it rejected Choice Pain's claims. Second, and for the same reasons, Choice Pain does not allege that Optum Maryland rejected its claims "to cause damage to plaintiffs in their lawful business." *See Macklin*, 639 A.2d at 119. Third, although Choice Pain alleges generally that Optum Maryland "acted with malice," ECF 2, ¶ 50, it does not state how. Instead, it lobs conclusions without specifics. *See, e.g., id.* ¶ 37 ("Choice Pain's minority ownership status is the only meaningful difference between it and the other similarly situated toxicology labs that had reimbursement claims approved by Optum."). In its opposition, Choice Pain argues that Optum Maryland had no business justification for denying Choice Pain's claims, expecting the Court to infer that Optum Maryland did so out of racial animus. *See* ECF 15, at 22 ("The lack of any legitimate business justification for the denial of these claims—especially given that similar claims from non-minority-owned labs were approved—supports the inference that the interference was wrongful." (citation omitted)). But Choice Pain's own allegations undermine this argument. According to the MDH Letter, Optum Maryland *had* a lawful reason to deny its claims. Like the others, this count founders as pleaded. It is dismissed.

## IV.      Conclusion

Choice Pain has not plausibly alleged that this Court has personal jurisdiction over Optum, Inc. Further, Choice Pain has not plausibly alleged that Optum Maryland rejected its reimbursement claims because of racial discrimination. Nor has Choice Pain plausibly alleged that Optum Maryland owed it a duty, made a false representation, or tortiously interfered with its business relationships.

For these reasons, the Court dismisses without prejudice Choice Pain's claims against Optum, Inc. for want of personal jurisdiction and dismisses without prejudice Choice Pain's claims against Optum Maryland for failure to state a claim on which relief can be granted.

19

A separate order will issue.

March 28, 2025

Deborah L. Boardman
United States District Judge